## DECKER BROS. v. BERNERS BAY M. & M. CO.

(First Division. Juneau. August 25, 1905.)

No. 603.

1. RECEIVERS, DUTY OF—TRUSTS.

A receiver is an officer of the court—the representative of the court in administering trust estates—he acts by order of the court; his powers come from the court; he has no individual status; his duty is to bring all the property belonging to his trust into possession, familiarize himself with the details of the estate and its business, keep accurate accounts, and make detailed reports with his recommendations to the court, to the end that the estate may be closed by the court as soon as the best interests of its owners or creditors will justify.

[Ed. Note.—For cases in point, see vol. 42, Cent. Dig. Receivers, § 151.]

2. SAME—APPOINTMENT—ELIGIBILITY—BIAS OR PREJUDICE.

One who is deeply interested in the estate, either as owner or creditor, or who is so closely connected with interests as to be open to grave suspicion of bias, ought not to be appointed receiver of an estate in the custody of the court.

[Ed. Note.—For cases in point, see vol. 42, Cent. Dig. Receivers, § 74.]

3. SAME—BOOKS AND PAPERS—INSPECTION.

All books, documents, and papers in the hands of a receiver are quasi public in character, and are open to examination, not only by the court, but by persons interested in the estate.

4. SAME—TIME OF CLOSING ESTATE.

Seven years is an unusual time to permit an estate to remain in the hands of a receiver.

Application by R. McM. Gillespie, Samuel Fairchild, and C. R. Corning, under the name and style of the "Reorganization Committee of the Berners Bay Mining & Milling Com-

pany," for the removal of Frederick D. Nowell as receiver of the Berners Bay Mining & Milling Company.

Shackleford & Lyons, for the reorganization committee.
John H. Cobb, for Frederick D. Nowell.

GUNNISON, District Judge. The reorganization committee of the Berners Bay Mining & Milling Company seeks the removal of the receiver herein upon several grounds, which include, generally, bias, incompetency, and dishonesty. The committee sought to come into the case as interveners. The charge laid against the receiver being of so serious a nature that if true the speedy removal of the receiver was imperative, the court refused to consider whether or not the petitioners were properly in court as interveners (the question being raised by counsel), and proceeded with the investigation of the matter, viewing the interveners as amici curiæ. A brief résumé of the history of the receivership in this case may be useful in illuminating the view of the case taken by the court.

On the 16th day of December, 1897, in this action, upon the application of Decker Bros., the plaintiffs, one E. F. Cassel was duly appointed the receiver of all the properties, assets, and effects of the Berners Bay Mining & Milling Company, the Seward Gold Mining Company, the Northern Belle Gold Mining Company, and the Ophir Gold Mining Company. The receiver qualified, and entered upon the discharge of his duties forthwith. Shortly after his appointment, petitions purporting to be signed by creditors holding 90 per cent. of the total indebtedness of the company asked for the removal of Cassel as receiver, and the appointment of F. D. Nowell, were filed. Before a hearing was had upon the petitions, Cassel filed a report, and asked therein to be discharged from further duties as receiver. An order was made on February 12, 1898, discharging Cassel, and appointing Frederick D. Nowell, who ap-

pears to have been the choice of 90 per cent. of the creditors, of the defendant companies at that time.

Nowell qualified as receiver and entered upon the discharge of his duties. For something over seven years he has continued as receiver, at times operating the mines under orders of the court. During that time the personnel of the court has changed twice, and the matter has been before three judges. Under the direction of the court, the receiver was authorized to operate certain of the mines or lodes, and to raise money therefor, and to pay certain indebtedness by the issuance of receiver's certificates; the certificates being made liens upon the corpus of the property in the event that the income from the mines was insufficient prior to the lien of the mortgage thereon. As to the propriety of such a step, or as to the status of the certificate holders, the court at this time has nothing to say. The court is, however, unable to find that the receiver, Nowell, has been guilty of any improper conduct or of dishonesty in the issuance of the certificates. He seems to have had the consent of the bondholders for both issues of certificates, as well as the authority from the court.

While the court as at present constituted does not in any way approve of the informal manner in which directions were given the receiver by the court, as shown by the undisputed evidence adduced on this hearing, it is of the opinion that the receiver should not be punished for the compliance with the directions of the court, which might not, of themselves, have been improper, and which, had the direction been given in the usual manner and way in which courts do and should give such directions, would have subjected the receiver to no criticism for his acts in compliance therewith.

The receiver is, in the affidavit of L. P. Shackleford, charged with the improper appropriation of certain funds in his hands as receiver. There is no evidence of bad faith or improper motives on his part in this transaction. It appears to the court

that the acts of Nowell in connection with the Kensington tunnel were in good faith, looking to the improvement of the property. Whether or not he can credit such expenditures to the personal account of Willis Nowell and himself is a question to be determined on his accounting, and not at this time, as are the matters of the payment of certain amounts upon the debts of the defendant companies, and other disbursements. The court is satisfied that in all these matters the receiver acted with good intentions, though many of such acts were undoubtedly ill-advised.

There are many charges imputing to F. D. Nowell dishonesty, bad faith, and incompetency in the operation of the properties and the disposition of receivership funds. The court is of the opinion that the charges of dishonesty and bad faith are in no degree substantiated, but that the acts of which complaint is made were induced by his overzealousness.

As to the last charge, the court thinks that the receiver at the hearing exhibited, to say the least, a deplorable lack of knowledge of the business which he has been operating for some seven years, and to which he testified he has been devoting his entire time. He seemed to be unfamiliar with the receiver's books, and testified that, though he has been in Boston, Mass., where the eastern office of the companies is situated, he has never seen the books of the companies in that place, and has made no effort to see them. He seems content to take his information at second-hand, and has little or no accurate information as to the business which this court has committed to his charge for so long.

The courts appoint receivers of properties pending the determination of litigation over them. This power is never exercised with prodigality, but when a court does stretch forth its arm and take properties under its protection, it does so for the purpose of preserving the properties from being wasted and dissipated, and keeping what remains for such as shall be found

to be entitled to it upon the determination of the litigation. In order to accomplish this purpose, the court strives to secure the services of capable and efficient business men for receivers to represent them in caring for it. One of the first, if not the first, duty of the receiver is to familiarize himself with every detail of the business, the custody of which he has undertaken, so that he may, from time to time, enlighten the court upon such phases of business as the court may desire information. It is, of course, necessary in large operations that bookkeepers and assistants should be employed by the receiver. However, it is not to them that the court looks for enlightenment, but to its sworn officer—the receiver. This officer should have the knowledge himself, and not refer to bookkeepers and assistants when asked concerning matters in connection with his trust. In this the receiver herein has failed.

Another duty of the receiver is absolute and unqualified impartiality in the administration of his trust. He should be chosen for this quality, as well as for his business ability. This qualification Mr. Nowell has not, and never has had. This is not to be taken as discrediting him in any way, for his interests were, and, I take it, now are, all with these companies. The mistake lies at the inception of the receivership. No person who has so deep and abiding an interest in a business, and who sustains such close and intimate relations to one of the parties to an action, should be appointed as receiver, even at the request of all the parties interested. This is emphatically demonstrated in this case. That all that Nowell has done as receiver has been in good faith the court does not doubt, but the interest and relationship remain, and these cannot but have warped his vision, try though he may to be unbiased.

These two facts, under ordinary conditions, would be more than sufficient to warrant the court in removing the present receiver and appointing a new one. But in the opinion of this

court this would be of no real advantage to any one interested. On the other hand, it would result in great additional expense and unnecessary delay in the closing of the receivership. It is patent that the trust has been permitted to run too long already. What should and must be done is to dispose of the property and close the receivership with as little delay as possible. In the meantime, the receiver must familiarize himself with the business which he has had under his direction so long, and prepare to make his final account with the greatest expedition. The knowledge of his bookkeepers, his assistants, or any one else, will not satisfy the court. The receiver himself, and of his own knowledge, must be able to inform the court of the matters pertaining to this trust.

With the efforts, plans, or propositions of reorganization committees or proposed purchasers of the properties in his custody, neither he, his attorneys, nor any one in his employ or under his direction, must interfere in any way. His sole duty in that line is to report to the court any and all propositions. Whether they are good or bad is of no consequence to him as receiver, except that it is his duty to advise the court as to the propositions made, and as to what his judgment is thereon. There his interest as an officer of the court must end, and the court will tolerate no other interference.

The receiver is an officer of the court, and every book, voucher, letter, document, or paper of any kind or nature, in or upon which may be found anything pertaining to the trust or his administration thereof, are quasi public in character, and are open to examination, not only by the court, but by persons interested in the estate. These must be arranged by the receiver so that they may be inspected whenever inspection is desired, and every facility must be given persons wishing to make such inspection. None of the above-mentioned books, vouchers, etc., must be permitted to pass from the custody of the receiver under any circumstances except when filed in the

court, for the receiver will be held responsible for every single paper, document, or book, down to the slightest scrap of paper belonging to the properties.

Though the motives and good faith of the petitioners herein have been impugned, it is not deemed necessary to consider them. That there are strong personal differences between the receiver and the petitioners is obvious. This fact, however, has no bearing upon the question as to the removal of the receiver. In the light of the facts developed on the hearing and a careful examination of the records and files, the court is of the opinion, as herein expressed, that the receiver is guilty of neither dishonesty nor bad faith, and that, though he has not shown a proper knowledge of the details of the business that he has conducted for seven years, and is not without bias in favor of one of the parties to the original action, a change in receivers should not be made.

The reasons for this seem obvious to the court. The properties should be sold without delay. To remove the present receiver would cause delay, both for his accounting, for the selection of a successor, and for his successor to sufficiently familiarize himself with the affairs of the trust. All these steps would necessitate additional expense to an already enormously expensive administration, and this without gaining any material advantage.

Let an order be entered denying the application, and setting forth the directions to the receiver as above.